TUCKER V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-471-CR

JOHN WILLIE TUCKER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

OPINION

------------

Appellant John Willie Tucker appeals from his jury conviction of a lesser included offense of possession of cocaine in an amount of four grams or more but less than two hundred grams of cocaine.  The trial court assessed his punishment at five years’ confinement.  In his first and second points, appellant contends that the trial court erred by denying his motion to suppress the evidence obtained from the search of the vehicle in which he was a passenger and by granting the State’s challenge for cause to one juror.  In his third and fourth points, appellant also contends that the evidence is legally and factually insufficient to support the finding of guilt against him.  We affirm.

Background

Denton County detectives notified patrol Officer Chris Plank to be on the look-out for a green 1996 Oldsmobile Cutlass, with license plate number TYK86T, that they believed would be holding felony parole violator Donald Gulley.  When Officer Plank saw the vehicle commit a traffic offense, he pulled the vehicle over.  The driver was Ivory Gober; the front-seat passenger was Donald Gulley, the person being sought; and the back seat passenger was appellant.  Officer Plank gave the driver a warning ticket for failing to use his turn signal one hundred feet before a turn and asked dispatch to check all three of the vehicle’s occupants for outstanding warrants.  Both Ivory, the driver, and Donald, the front-seat passenger, had outstanding warrants for their arrests. 

When Officer Plank instructed Donald to get out of the car so that he could be handcuffed, Officer Plank saw appellant—the back seat passenger—stuff something down into the car seat to his left.  Another officer also saw appellant doing something.  At that point, Officer Plank instructed appellant to step out of the vehicle.  Officer Plank could see a plastic baggie sticking out of the rear seat and removed it, believing it to contain crack cocaine.  He handcuffed appellant at this time and continued his search of the vehicle, in which he found a pill bottle containing twelve rocks of crack cocaine from the front seat where Donald had been seated.

At trial, appellant testified that his cousins, Donald and Larry Gulley, picked him up from the airport the day that he arrived in Texas from Arizona and took him to his sister’s house.  The next day, appellant and Donald were going to Arkansas to see their grandmother.  Donald, driving his girlfriend’s car, and Donald’s girlfriend picked up appellant, and they ran some errands.  Later, they drove to some apartments to pick up Ivory.  While they were waiting on Ivory, Duane Lawson came out to the car and sat in the back seat until Ivory showed up.  Duane got out of the car and Ivory got in so that Ivory and appellant were in the back seat, and Donald and his girlfriend were in the front.  They eventually dropped off Donald’s girlfriend, and at the time they were stopped, Ivory was driving, Donald was the front seat passenger, and appellant remained in the back alone.  Appellant testified that he did not hide anything or take anything out of his pocket.  He also testified that he did not know that anyone had possession of any drugs or any drug paraphernalia, and in fact, that he really did not even know the people his cousin had picked up in the car. 

The Suppression Issue

In one multifarious point, appellant claims that the trial court erred by denying his motion to suppress the warrantless search of the vehicle in violation of the Fourth and Fourteenth Amendments to the United States Constitution; he appears to challenge both the stop of the vehicle and his search and arrest.  In his initial argument under his first point, appellant contends that the officer could not have seen the driver’s failure to use a right turn signal because he was “not in a position to see the vehicle one-hundred (100) feet before the stop sign.”  Also, he argues that the officer did not have reasonable suspicion to believe that appellant was engaged in criminal activity that would justify the further investigation or detention of him.
(footnote: 1)
 Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State,
 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court's decision, we do not engage in our own factual review.  
Romero v. State,
 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State,
 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. 
 State v. Ross,
 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard, 
987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 
 Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. 
 Johnson v. State,
 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002);
 
State v. Balllman, 
157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2005, pet. ref’d);
 Harrison v. State, 
144 S.W.3d 82, 85 (Tex. App.—Fort Worth 2004, pet. granted)
;
 Best,
 118 S.W.3d at 861-62.  However, when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact.  
Johnson,
 68 S.W.3d at 652-53.  

When the trial court does not file findings of fact, we are to view the evidence in the “light most favorable to the trial court’s ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record.”
  Ross, 
32 S.W.3d at 855; 
Guzman, 
955 S.W.2d at 89; 
State v. Maldonado, 
No. 01-03-774-CR, 2004 WL 2306703, at *2 (Tex. App.—Houston [
1st Dist.] Oct. 14, 2004, no pet.).
 When the sole witness at the motion to suppress hearing is the officer and the trial court filed findings of fact and conclusions of law, as in this case, the only question before us is whether the trial court properly applied the law to the facts it found.  
Ballman
, 157 S.W.3d at 69; 
see also Carmouche
, 10 S.W.3d at 327-28; 
Guzman
, 955 S.W.2d at 86-87, 89. 

Probable Cause to Stop Vehicle for Traffic Violation

Before addressing the merits of appellant’s complaint regarding the initial traffic stop, we must first determine whether appellant has standing to challenge the initial stop of the vehicle.

Proof of “a reasonable expectation of privacy” is at the forefront of all Fourth Amendment claims.  Any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded.  He must prove that he was a “victim” of the unlawful search or seizure.  He has no standing to complain about the invasion of someone else's personal rights.  Only after a defendant has established his standing to complain may a court consider whether he has suffered a substantive Fourth Amendment violation.  Although we defer to the trial court's factual findings and view them in the light most favorable to the prevailing party, we review the legal issue of standing 
de novo
. 

Kothe v. State
, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004) (footnotes omitted); 
Matthews v. State
, 165 S.W.3d 104, 110-11 (Tex. App.—Fort Worth  2005, no pet.).  

A passenger generally has no standing to contest the 
search
 of a vehicle. 
 Stone v. State
, 147 S.W.3d 657, 659 (Tex. App.—Amarillo 2004, pet. ref’d); 
Carroll v. State
, 56 S.W.3d 644, 650 (Tex. App.—Waco 2001, pet. ref’d); 
see also Morfin v. State
, 34 S.W.3d 664, 666-67 (Tex. App.—San Antonio 2000, no pet.) (holding passenger has no legitimate expectation of privacy in a vehicle without a possessory interest in it but does have standing to challenge seizure of his or her 
person
).  A passenger has no standing to complain about the invasion of someone else’s personal rights but retains the right to show that “he personally had a reasonable expectation of privacy that the government invaded.”  
Kothe
, 152 S.W.3d at 59.  As 
Kothe 
explains, a defendant must show that “he was a ‘victim’ of the unlawful search or seizure.”  
Id.
  Generally, a stop results in a seizure of the passenger and driver alike, so we will address appellant’s complaint regarding the initial stop.  
Id
. at 61 n.19.  However, it is critical that the “precise police conduct being objected to be properly identified, for this may itself turn out to be determinative on the standing issue.”  
Id.
 at 60.

Appellant appears to challenge the initial stop for the driver’s failure to signal a turn.  When a traffic violation is committed in an officer's presence, the officer has probable cause to lawfully stop and arrest or detain the violator.  
Tex. Code Crim. Proc. Ann
. art. 14.01(b) (Vernon 2005); 
Tex. Transp. Code Ann
. § 543.001 (Vernon 1999); 
Williams v. State
, 726 S.W.2d 99, 101 (Tex. Crim. App. 1986); 
Tyler v. State
, 161 S.W.3d 745, 748 (Tex. App.—Fort Worth 2005, no pet.). 

Appellant challenged the officer’s ability to observe the driver’s failure to signal for the one hundred feet before the turn.  
See 
Tex. Transp. Code Ann. §
§ 545.104, 545.106.  Appellant says that because the officers did not have a clear view of the car from the entire one hundred feet before the stop, there is no evidence to support the stop.  Appellant points to the driver’s testimony as well as defense exhibit one to controvert the officer’s testimony.  However, the officer’s testimony was clear that
 at least at the time the car reached the stop sign 
the driver had not signaled to turn.  Only after the driver saw the officer, did he signal to turn, according to the officer.  While Ivory’s testimony conflicts with the officer’s because Ivory states that he always signaled before he made a turn at an intersection, this is a fact determination made by the trial court to which we give great deference.  Because these findings are therefore supported by the record and we view them in favor of the trial court’s ruling, we conclude that the trial court properly determined that there was probable cause to stop the vehicle due to a traffic violation.  Therefore, we hold that any challenge appellant is making relative to the preliminary stop and detention of the car is overruled.  This portion of his first point is overruled, and we now address his challenge to his detention and investigation.

Reasonable Suspicion to Detain and Investigate Appellant

Once Officer Plank stopped the vehicle, he first identified all occupants of the vehicle.  He returned to his patrol car to write a warning ticket for Ivory and to run all the names of the occupants for warrants.  He determined that there were outstanding warrants for both the driver, Ivory, as well as the front seat passenger, Donald.  He placed both of them under arrest.  While handcuffing Donald, Officer Plank saw appellant making movements as if he was shoving something under his seat with his left hand.  Officer Plank then asked appellant to exit the car.  As soon as appellant got out, the officer could see a plastic baggie sticking out of the back seat of the car where the seat and the back upholstery meet, right next to where appellant had been sitting.  The officer retrieved the baggie, which appeared to contain crack cocaine, and then arrested appellant.  During his testimony, Officer Plank testified that he stopped the vehicle for the failure to properly use the turn signal and to see if Donald, who was wanted for a parole violation, was in the previously identified car.  The officer’s videotape of the stop, detention, and investigation supports the officer’s testimony.  However, appellant contends that Officer Plank did not have authority to request identification or check for outstanding warrants of the passengers in the car based upon this information relying primarily on this court’s recent opinion in 
St. George v. State
.  Nos. 02-03-00421-CR and 02-03-00422-CR, 2004 WL 1944779 (Tex. App.—Fort Worth Aug. 31, 2004, no pet. h.).  However, this court’s opinion in 
St. George
 has been withdrawn this month and therefore may no longer be relied upon.

Temporary investigative detentions are appropriate when officers have “specific articulable facts, which, premised upon [the officer’s] experience and personal knowledge, when coupled with the logical inferences from those facts would warrant the intrusion on the detainee.”  
Davis v. State
, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).  Officers have authority to stop and briefly detain persons who are suspected of criminal activity on less information than is constitutionally required for probable cause to arrest.  
Id.  
To satisfy the Fourth Amendment and 
Terry v. Ohio, 
we know that we review the reasonableness of the stop by looking to the justification for the stop and also consider the reasonableness of the scope of the detention.  
392 U.S. 1, 19-20, 88 S. Ct. 1868, 1879 (1968).  The duration of the stop is reviewed by determining whether the police “diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly.”  
Cisneros v. State
, 165 S.W.3d 853, 859 (Tex. Crim. App. 2005) (citing 
Davis
, 947 S.W.2d at 245).

In a traffic stop situation, the police may ask for identification, a valid driver’s license, and proof of liability insurance. 
 Police may also check for outstanding warrants.  
During the stop, however, an officer must use “the least intrusive means reasonably available to verify or dispel [the officer’s] suspicion in a short period of time.” 

Id.
 (citing 
Davis
, 947 S.W.2d at 245) (citations omitted).

Reasonable suspicion exists when an officer has specific, articulable facts that would cause him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity.  
Ford v. State
, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  This determination is made by considering the totality of the circumstances.  
Id.
 at 492-93.  In evaluating the totality of the circumstances, we apply a bifurcated standard of review, giving “almost total deference to the trial court’s determination of historical facts and review de novo the trial court’s application of law to facts not turning on credibility and demeanor.”  
Id.
 at 493.

In the present case, one of the specific purposes of the stop was to also determine whether anyone in the vehicle was the suspected parole violator, Donald Gulley.  Consequently, it was necessary for the officer to identify all the people in the vehicle, especially because the first person he necessarily identified, the driver, was not Donald.

Also, as the State points out, appellant does not complain about being asked for identification or the warrant check.  Moreover, the officers did not detain 
appellant
 for the purpose of running the warrant check; instead they ran the check simultaneously with the check on the driver and did not extend the time for the initial detention.  We conclude, therefore, that the officer’s detention and investigation was handled in a reasonably limited manner.  Further, because new reasonable suspicion arose during Officer Plank’s limited investigation relating to appellant and his movements in the back seat, we cannot say that the officer’s removal of appellant from the back seat and his resulting search of the back seat and the rest of the vehicle was unreasonable.  We overrule the remainder of appellant’s first point challenging the trial court’s suppression ruling.

Sufficiency of Evidence:  Possession

In appellant’s third and fourth points, he challenges the legal and factual sufficiency of the evidence to support the “possession” prong of his possession of cocaine conviction.  Appellant points to the sole evidence of any potential possession by him—that the cocaine was found in a plastic baggie sticking out of the back seat near where he had been sitting—and contends that because he did not own the vehicle and because he was not driving or solely occupying the vehicle, the evidence is both legally and factually insufficient to support the judgment.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to
 the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484. 

To prove unlawful possession of a controlled substance, the State must prove that the accused exercised control, management, or care over the substance and that he knew the matter possessed was contraband.
  Tex. Health & Safety Code Ann
. § 481.002(38) (Vernon Supp. 2005); 
Joseph v. State
, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995); 
Martin v. State
, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988).  The evidence “must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous.  This is the whole of the so-called 'affirmative links' rule.”
  Brown v. State
, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); 
Garrett v. State
, 161 S.W.3d 664, 671-72 (Tex. App.—Fort Worth 2005, pet. ref’d).

The “affirmative links rule” is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs.  This rule simply restates the common-sense notion that a person—such as a father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house.  Thus, we have formulated the rule that "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband."

Poindexter v. State
, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (footnotes omitted); 
McQuarters v. State
, 58 S.W.3d 250, 259 (Tex. App.—Fort Worth 2001, pet. ref’d).  Factors we consider include  (1) the defendant's presence when the search warrant was executed, (2) whether the contraband was in plain view, (3) the defendant's proximity to and the accessibility of the narcotic,  (4) whether the defendant was under the influence of narcotics when arrested,  (5) whether the defendant possessed other contraband or narcotics when arrested, (6) whether the defendant made incriminating statements when arrested, (7) whether the defendant attempted to flee, (8) whether the defendant made furtive gestures, (9) whether there was an odor of the contraband, (10) whether other contraband or drug paraphernalia were present,  (11) whether the defendant owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether the accused was the driver of the automobile in which the contraband was found, (14) whether the defendant was found with a large amount of cash, and (15) whether the conduct of the accused indicated a consciousness of guilt.  
McQuarters
, 58 S.W.3d at 259.

Officer Plank testified that he observed appellant appearing to stuff something down in between the back seats.  At the time of the stop, appellant was the only person sitting in the back seat, and neither of the front seat passengers could have reached the drugs from their positions.  Additionally, as Officer Plank testified, the drugs were in plain view within the baggie, which was found near where appellant had been seated.  Appellant admitted that he had been in the car in the back seat during the entire car ride.  More importantly, the videotape of the arrest, which was included in the appellate record, substantiates the officer’s testimony and shows appellant’s movements in the back seat of the car.  It also shows how quickly Officer Plank reached into the back seat and immediately recovered the baggie containing the drugs. As noted by the State in its brief, appellant’s testimony was the only testimony that potentially controverted the State’s evidence.  The trier of fact, as the sole judge of the credibility of the witnesses, was entitled to believe or disbelieve such testimony.  
Poindexter
, 153 S.W.3d at 406 (“In deciding whether the evidence is sufficient to link the defendant to contraband, the trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony.”).  

Applying the appropriate standards of review and the affirmative links rule, we conclude that the evidence was legally and factually sufficient to support appellant’s possession of the cocaine and the resulting jury’s verdict.  We overrule appellant’s third and fourth points. 

Challenge for Cause

In appellant’s second point, he contends that the trial court erred by granting the State’s challenge for cause as to venireperson Hansen.  The code of criminal procedure allows parties to challenge a juror for cause when the challenging side can show that the juror is incapable or unfit to serve on the jury.  
Tex. Code Crim. Proc. Ann
. art. 35.16 (Vernon Supp. 2005); 
Lydia v. State
, 117 S.W.3d 902, 905 (Tex. App.—Fort Worth 2003, pet. ref’d).  There are many specific challenges, but the rule also allows a juror to be challenged for cause if either side can show “[t]hat the juror has a bias or prejudice in favor of or against the defendant.”  
Tex. Code Crim. Proc. Ann.
 art. 35.16(a)(9).  

The court of criminal appeals has held that a member of the venire may be properly challenged for cause and removed “if he cannot impartially judge the credibility of a witness.”  
Ladd v. State, 
3 S.W.3d 547, 560 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1070 (2000).  Potential jurors “must be open-minded and persuadable, with no 
extreme
 or 
absolute
 positions regarding the credibility of any witness.”  
Id
.  While a defendant does not have a right to have a particular juror sit on his jury, he does have the right “
not
 [to] have a particular venire member on the jury 
if
 the venire member is challengeable for cause or the defendant exercises one of his peremptory challenges.”  
Johnson v. State
, 43 S.W.3d 1, 6-7 (Tex. Crim. App. 2001).

We review a trial court's ruling on a challenge for cause with “considerable deference” because the trial court is in the best position to evaluate the veniremember's demeanor and responses.  
Newbury v. State
, 135 S.W.3d 22, 32 (Tex. Crim. App.), 
cert. denied
, 125 S. Ct. 496 (2004); 
Colburn v. State
, 966 S.W.2d 511, 517 (Tex. Crim. App. 1998); 
Guzman
, 955 S.W.2d at 89 (appellate courts afford “almost total deference” to a trial court's resolution of factual and legal issues that turn on an evaluation of credibility and demeanor).  We reverse a trial court's ruling on a challenge for cause “only if a clear abuse of discretion is evident.”  
Newbury, 
135 S.W.3d at 32 (citing 
Colburn, 
966 S.W.2d at 518; 
Moore v. State
, 54 S.W.3d 529, 535 (Tex. App.—Fort Worth 2001, pet. ref’d).  “[T]o show error in the trial court’s grant of the State’s challenges for cause, an appellant must show either that the trial court applied the wrong legal standard in sustaining the challenge or that the trial court abused its discretion in applying the correct legal standard.” 
 Moore, 
54 S.W.3d at 535.  Further, in cases in which the venireperson is vacillating, almost total deference is given to the trial court’s decision.  
See Clark v. State
, 929 S.W.2d 5, 9 (Tex. Crim. App. 1996), 
cert. denied
, 520 U.S. 1116 (1997);
 Brown v. State, 
913 S.W.2d 577, 580-81 (Tex. Crim. App. 1996)
.  To preserve trial court error in granting a State’s challenge for cause, the defense must object.  
Tex. R. App. P.
 33.1(a).

Venireperson Hansen disclosed that she had been charged with public intoxication in Denton and would be very careful in reviewing any evidence coming from a police officer due to her pending public intoxication charge.  She stated that she thought illegal drugs should be legalized and taxed like other legal substances.  When asked about potential bias, she stated, “I’d have to look at the facts, because I never thought of myself as somebody who would get arrested until it happened.”  She continued, “I would think that I wouldn’t [be biased], but there is a tendency to see it from the other side, which I’ve never had that perspective until now.”  On further individual questioning by the State, she answered “yes” when asked if she would be biased against the State.  She also stated, “I feel like I’m more critical now that I have gotten into the system than I would have been two or three months ago before interaction with the officers.”  And on whether she would believe police officers, she said that she would believe them and follow the law.  She did not think that she would be less trusting just because they were Denton officers but that she would definitely be more critical towards officers than she would have been prior to her experience with the officer in her case.  Appellant objected once the trial court granted the State’s challenge.

We conclude that venireperson Hansen’s disclosures are sufficient to support the trial court’s grant of the State’s challenge for cause.  Her vacillation, if any, is more than sufficient for us to conclude that there was no clear abuse of discretion on the trial court’s part by granting this challenge.
  We overrule appellant’s second point.

Conclusion

Having overruled all of appellant’s points, we affirm the judgment of the trial court.

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and WALKER, JJ.

PUBLISH 

DELIVERED: December 29, 2005

FOOTNOTES
1:
The parties stipulated that the stop was made without a search warrant.