COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-174-CR

 

 

ELPIDIO BERCERRIL                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

In three points, appellant
Elpidio Bercerril appeals his conviction and sentence for possession of 400 or
more grams of cocaine with intent to deliver.[2]  We affirm.








BACKGROUND 

On November 24, 2003,
officers with the Fort Worth Police Department Narcotics Division[3]
found Appellant, Gustavo Rodriguez, Jose Arevalo, and forty-three kilograms of
cocaine, worth around $16,000 per kilogram, at a residence located at 4316
Goddard Street in Fort Worth.  The
residence belonged to Rodriguez and had been under surveillance that day.  Eduardo Cantu, the target of the cocaine trafficking
investigation, was arrested approximately fifteen minutes after he left the
residence.  The police found three
kilograms of cocaine[4]
in his vehicle during a traffic stop. 
Shortly after Cantu=s arrest, Sergeant Hall and Lieutenant Morgan acted to Afreeze@[5] the residence while Officer Cedillo secured a search warrant for it.








Sergeant Hall testified that
before approaching the house, he put on a bullet-proof vest and a black vest with
APOLICE@ in large
letters on the back, over his plain clothes. 
Neither Sergeant Hall nor Lieutenant Morgan wore masks, although some of
the officers who subsequently joined them did.[6]
Sergeant Hall testified that they went onto the property to see if it had any
natural escape routes and approached a garage behind the residence when they
heard metal-on-metal noises coming from it. 
He stated that his concern was that the people inside Awere either hiding or getting rid of the evidence.@  He testified that the garage
door was open to a degree that he could see underneath it, and that he and
Lieutenant Morgan raised the garage door and identified themselves as police.

Sergeant Hall testified that
Appellant was standing next to the truck and appeared to be working on a
toolbox in the back of the truck. 
Appellant had a wrench in his hand. 
Sergeant Hall said that the men appeared to be in the process of bolting
the toolbox to the bed of the truck. 
They ordered the three men to stop what they were doing and to wait in
the corner of the garage, and they searched only after the search warrant was
signed about an hour later.








Officer Martinez arrived to
help with the search and found a flowered overnight bag near the garage door that
contained Aseveral
kilos of cocaine,@ in addition
to an ice chest and two boxes on the floor, which also contained cocaine.  Sergeant Hall testified that the officers
discovered that the pick-up truck had an altered gas tank with a trapdoor,
lined with axle grease, which he testified is used to mask the odor of cocaine
from drug-sniffing dogs.  Appellant
demonstrated how to lift the toolbox from the truck using the garage hoist. When
the toolbox was lifted, the altered fuel tank was revealed.

Officer Cedillo testified
that when he arrived at the scene, he spoke to Appellant in Spanish and read
Appellant his rights, and that Appellant understood them and agreed to waive
them and talk with him.  Officer Cedillo
testified that he was in plain clothes, but not wearing a mask, when he talked
with Appellant.  Officer Cedillo
questioned Appellant in the living room of the house.  He testified that they were alone in the
living room but that there were several other officers in other parts of the
house.  Appellant wrote a statement,
consisting of one sentence in Spanish, which Cedillo translated as, AI was asked to help unload the truck and 5,000.@








Appellant pled not
guilty.  He testified that Arevalo called
him, asked him to do some mechanical work on his truck, picked Appellant up,
and drove him to the residence.  Appellant
testified that he checked the truck=s oil, cleaned its battery posts, and checked a headlight, and that he
was just finishing his work when the police arrived.  He testified that an officer asked him for
help with the hoist and that he Ajust g[a]ve him an option of how to do the things,@ and that he did not volunteer to help.  He also testified that no one read him his Miranda
rights on the statement sheet, but he admitted that his initials were by each
of the rights and that he wrote them there.

Appellant explained that he
wrote down the figure A5,000,@ because he felt pressured by a masked officer to do so, although he
acknowledged that the officer did not threaten him.  He testified that Officer Cedillo lied about
not wearing a mask and he claimed that he did not know about the cocaine
packages and had not seen them until they were shown in court.  Appellant also acknowledged at trial that he
was a welder and owned welding equipment.     Appellant
denied knowing Arevalo before that day, other than seeing him twice in a bar,
or that he knew Cantu or Rodriguez at all before that day.  His wife invoked her spousal privilege, and
the State offered a transcript of her testimony at the bond hearing; the
transcript was admitted into evidence. 
In that transcript, she testified that she was friends with Rodriguez=s wife, knew Arevalo, and knew Cantu because he was one of Appellant=s friends.

The jury found Appellant
guilty.  The trial court assessed thirty
years= confinement and a $5,000 fine as punishment and sentenced him
accordingly. 

 

 








SUFFICIENCY OF THE EVIDENCE

In his first two points,
Appellant challenges the legal and factual sufficiency of the evidence to show
that he possessed or was affirmatively linked to the drugs.

Standard Of Review








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).  This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789.  The trier of
fact is the sole judge of the weight and credibility of the evidence.  See Tex.
Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). 
Thus, when performing a legal sufficiency review, we may not re‑evaluate
the weight and credibility of the evidence and substitute our judgment for that
of the fact‑finder.  Dewberry v.
State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529
U.S. 1131 (2000).  We must resolve any
inconsistencies in the evidence in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406
(Tex. Crim. App. 2000).  The sufficiency
of the evidence should be measured by the elements of the offense as defined by
the hypothetically correct jury charge for the case.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997); Bowden v. State, 166 S.W.3d 466, 470 (Tex. App.CFort Worth 2005, pet. ref=d).

When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact‑finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact‑finder=s
determination is manifestly unjust.  Watson, 204 S.W.3d at 414‑15, 417; Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the fact‑finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  Thus, we must give due deference to
the fact‑finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.

Affirmative Link

To support a conviction for
unlawful possession of a controlled substance, the State must affirmatively
link the accused to the contraband by proving that the accused (1) exercised
control, management, or care over the contraband and (2) knew the substance he
possessed was contraband.  See Tex. Health & Safety Code Ann. '' 481.002(38), 481.112(a); Poindexter v. State, 153 S.W.3d 402,
405-06 (Tex. Crim. App. 2005); Brown v. State, 911 S.W.2d 744, 747 (Tex.
Crim. App. 1995).  Under the Aaffirmative links@ rule, 








when the accused is not in exclusive possession
of the place where the substance is found, it cannot be concluded that he had
knowledge of and control over it unless there are additional independent facts
and circumstances which affirmatively link him to the contraband.  Poindexter, 153 S.W.3d at 406.  That is, the evidence must establish, to the
requisite level of confidence, that the accused=s connection with the drug was more than just fortuitous.  Id. at 405-406; Tucker v. State,
183 S.W.3d 501, 510 (Tex. App.CFort Worth 2005, no pet.).








Affirmative links can be
proven by direct or circumstantial evidence. 
Brown, 911 S.W.2d at 747. 
Factors we consider include (1) Appellant=s presence when the search warrant was executed, (2) whether the drugs
were in plain view, (3) Appellant=s proximity to and the accessibility of the drugs, (4) whether he was
under the influence of narcotics when arrested, (5) whether he possessed other
contraband or narcotics when arrested, (6) whether he made incriminating
statements when arrested, (7) whether he attempted to flee, (8) whether he made
furtive gestures, (9) whether there was an odor of the contraband, (10) whether
other contraband or drug paraphernalia were present, (11) whether he owned or
had the right to possess the place where the drugs were found, (12) whether the
place where the drugs were found was enclosed, (13) whether he was found with a
large amount of cash, and (14) whether his conduct indicated a consciousness of
guilt.  See Tucker, 183 S.W.3d at
510. 

The State presented no
evidence on factors (2), (4), (5), (7)-(9), (11), and (12).  However, the number of relevant factors is
less significant than the logical force of the link they establish between the
accused and the controlled substance.  See
Hudson v. State, 128 S.W.3d 367, 374 (Tex. App.CTexarkana 2004, no pet.). 
Affirmative links are established by the totality of the circumstances.  See Wootton v. State, 132 S.W.3d 80, 87
(Tex. App.CHouston
[14th Dist.] 2004, pet. ref=d).

Appellant argues that only
his written statement hints at a tie to the altered pickup truck.  However, the evidence at trial showed that
Appellant was present when the search warrant was executed.  The drugs were found in four different locations
in the garage: a flowered overnight bag near the garage door, on the west side
of the garage, an ice chest on the east wall of the garage, and in two boxes on
the floor.  Appellant, who was standing
next to the truck when Sergeant Hall and Lieutenant Morgan instituted the Afreeze,@ was
essentially surrounded by contraband. 
From Sergeant Hall=s testimony
about the noise and seeing the men working on the toolbox, and Appellant=s admission that he is a welder, the jury could have inferred that
Appellant had more than just a fortuitous link to the drugs.








Appellant made two
incriminating statementsChis written
statement and the assistance he provided to the police in demonstrating how to
use the hoist. Appellant disputed the voluntariness of both statements at
trial, however, no motion to suppress was filed or suppression hearing
held.  Appellant=s testimonyCthat when
asked about the hoist, he just gave the officers an option on how to use it,
and that he was not threatened to compel his statement Cdoes not indicate that either action was actually involuntary.  As to other contraband or drug paraphernalia,
the officers testified that the truck=s altered gas tank, which Appellant revealed by using the hoist to
remove the toolbox, was a secret compartment that could be used for
transporting drugs.








In deciding whether the
evidence is sufficient to link a defendant to contraband, the trier of fact is
the exclusive judge of the credibility of the witnesses and the weight to be given
to their testimony.  Poindexter,
153 S.W.3d at 406.  The jury could have
found Officer Cedillo, who testified that he read Appellant his rights in
Spanish, that Appellant understood those rights, and that he was not wearing a
mask when he talked with Appellant, more credible.  They could have chosen to believe, based on
the evidence, that Appellant knew Rodriguez, Cantu, and Arevalo, and that he
was hired not to perform mechanical work on the truck but to unload drugs from
it.  Viewing this evidence in the light
most favorable to the verdict and resolving any inconsistencies in its favor,
we conclude that the jury could have found legally sufficient evidence of an
affirmative link between Appellant and the cocaine.  See Curry, 30 S.W.3d at 406; see
also Tucker, 183 S.W.3d at 510-11 (holding that proximity and drugs in
plain view were sufficient to establish affirmative link).  We overrule Appellant=s first point.

Viewing all the evidence in a
neutral light, we also conclude that the evidence is not so weak that the jury=s determination was clearly wrong and manifestly unjust, or that a
different result would have been appropriate. 
The jury, considering all of the circumstances and evaluating the
witnesses= credibility
and demeanor, could have found the officers= testimony more credible than Appellant=s, supporting their finding that the evidence was factually sufficient
to show an affirmative link between Appellant and the cocaine.  See Watson, 204 S.W.3d at 414-15, 417;
Johnson, 23 S.W.3d at 8.  We
overrule Appellant=s second
point.

JURY CHARGE

In his third point, Appellant
complains that the trial court erred at the guilt-innocence phase by failing to
instruct the jury, sua sponte, that before it could use extraneous
offense evidence against him, it had to first find beyond a reasonable doubt
that he committed the offense.

 








Standard Of Review

Appellate review of error in
a jury charge involves a two‑step process.  Abdnor v. State, 871 S.W.2d 726, 731
(Tex. Crim. App. 1994).  Initially, we
must determine whether error occurred. 
If so, we must then evaluate whether sufficient harm resulted from the
error to require reversal.  Id. at
731‑32.

Extraneous Offense








Appellant complains that the
evidence that Cantu possessed three kilograms of cocaine when he was stopped
for a traffic violation was an extraneous offense.  Appellant argues that he was harmed because
there was no instruction Aon how the
jury should negotiate@ that
evidence and no evidence that Appellant was connected as a party to Cantu=s offense. Specifically, Appellant claims that because there was no
evidence to connect him to Cantu=s acts, the admission of that evidence without a reasonable doubt
instruction harmed him because it deprived and diminished his defense of mere
presence alone, causing him to lose credibility before the jury.  The trial court did not err by failing to sua
sponte give a reasonable doubt instruction on the alleged extraneous
offense during the guilt‑innocence phase. 
See Allen v. State, 180 S.W.3d 260, 265-66 (Tex. App.CFort Worth 2005, no pet.) (holding that a sua sponte reasonable
doubt instruction on extraneous offenses is not required at guilt‑innocence);
compare Huizar v. State, 12 S.W.3d 479, 484‑85 (Tex. Crim. App.
2000) (op. on reh=g) (stating
that failure to sua sponte give a reasonable doubt instruction at punishment
regarding extraneous offense evidence is error subject to the Almanza harm
analysis).  We overrule Appellant=s third point.  See Abdnor,
871 S.W.2d at 731.

CONCLUSION

Having overruled all of
Appellant=s points, we
affirm the trial court=s  judgment.

PER CURIAM

PANEL F: 
HOLMAN, WALKER, and MCCOY, JJ.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED: 
March 22, 2007











[1]See Tex.
R. App. P. 47.4.





[2]A person commits an offense if he
knowingly possesses with intent to deliver a controlled substance listed in
Penalty Group 1.  Tex. Health & Safety Code Ann. ' 481.112(a) (Vernon 2003).  Penalty Group 1 includes cocaine.  Id. ' 481.102(3)(D) (Vernon Supp. 2006).





[3]Sergeant Hall, Lieutenant Morgan,
and Officers Cedillo, Martinez, De Los Santos, and Blaisdell were involved in
the events of November 24, 2003.  Hall,
Cedillo, Martinez, and Blaisdell testified at trial.





[4]The Narcotics Division had
previously arranged an undercover drug deal with Cantu for three kilograms for
November 24, 2003.





[5]According to testimony at trial, in
a Afreeze,@ law enforcement officers approach
a location and secure or detain any individuals at the location to prevent the
destruction or removal of evidence pending the officers obtaining a search
warrant.





[6]Officer Blaisdell testified that
some of the Hispanic officers wore masks to prevent suspects from seeing their
faces because of the likelihood of running into the same suspects Aa year or two down the road.@ 
Sergeant Hall testified that masks are also worn because if the media
arrived at the scene and photos of undercover officers were published, it could
present a danger to them or jeopardize an investigation.