COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS. 2-06-346-CR 

      2-06-347-CR

JEREMIAH LAMONT MCCRAY APPELLANT

A/K/A JEREMIAH L. MCCRAY

V.

THE STATE OF TEXAS STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Jeremiah Lamont McCray a/k/a Jeremiah L. McCray complains  in one point that the evidence is legally insufficient to sustain his convictions for possession of marijuana and unlawful possession of a firearm by a felon.  Specifically, McCray argues that there is no evidence linking him to the marijuana.  We affirm.
(footnote: 2) 

II.  Factual and Procedural Background

A.  The Raid

Based on information received from a confidential informant, on January 24, 2006, Fort Worth police officers executed a search warrant for drugs at McCray’s home located at 1001 Haynes Street.  When they entered the house, the officers immediately saw marijuana, guns, and cash.  Only McCray and his girlfriend were found in the home.  When the officers entered, McCray was standing in the kitchen close to the refrigerator and told the officers, “[W]e only got usable amounts,” and “[T]hat’s my usable amount.”  A sack in the refrigerator was discovered containing forty bags filled with marijuana. 

B.  Trial Testimony

At trial, Officer Ornelas testified about the information he received from a confidential informant, who had worked with the officer for three-and-a-half years, about the “drug house” at 1001 Haynes Street.  Ornelas acted on the information by having undercover drug buys made at the location, including two separate buys being made by the confidential informant, who reported he had also seen a shotgun at the residence.  The officer obtained a search warrant based on the buys, the presence of the shotgun, and a description from the confidential informant of the seller, who was described in the warrant as a thirty-year-old black male who was five feet seven inches tall, weighed 160 pounds, and had a medium complexion and short hair.  Officers used a battering ram to swing and force the door open because they had a difficult time opening the door—it had been barricaded from the inside with two-by-fours.  Ornelas testified that two weapons were recovered in the living room along with seven baggies containing marijuana and a small amount of cash.  He also testified, as previously recounted, that McCray and the female were the only people in the house.  

On cross-examination Ornelas testified that: (1) he had not seen McCray before that night; (2) he did not know when McCray arrived at the house, how McCray got to the house, or how long McCray had been in the house; (3) neither McCray nor the female as holding a gun; (4) he did not know if McCray owned or leased the house; and (5) the police did no investigation into who actually owned the house.  According to Ornelas, the description of the seller in the warrant coincided with what the confidential informant had said.  Ornelas testified that he arrested McCray because

Mr. McCray was the only male inside the residence.  With the exception of the weight, I felt that he matched the physical description that was listed in the search warrant of the suspect.  And he was also found in close proximity of the majority of marijuana, which was found inside the residence.

Ornelas also testified that a black male showed up at the house after the search and told the police he lived at the house and was the brother of the female who had been detained.  Additionally, while the officers were conducting their investigation, approximately fifteen people came to the house and attempted to purchase bags of marijuana.

Another Fort Worth police officer, Officer Garwacki, testified that the people who kept coming up to the house were detained, and a suspect fled the residence and was caught and arrested for evading arrest and assault.  Garwacki identified McCray as the person he saw in the kitchen of the home and said that he found about $240 on McCray, who claimed that “[h]e just had it.”  Garwacki also testified about gathering and marking evidence.  On cross-examination, Garwacki testified that he had custody of McCray for five minutes before turning him over to another officer.  He also testified that he never heard McCray say anything about usable quantity, and he never saw McCray in possession of any contraband or weapons.

Officer John Ost testified that the reason McCray was arrested was that he was in close proximity to the refrigerator and that he closely matched the description in the arrest warrant.  He was also the only male around the drugs, guns,
 
and the cash.  On cross-examination, Ost testified that McCray is dark complected, and not medium complected as the warrant specified, and that he did not know that the description in the arrest warrant came from the confidential informant.

Officer Brian Burns testified that seven days before the execution of the search warrant, he was dispatched to the home at issue.  McCray answered the door, told Burns that the location was his home address, and invited the officer inside.

Following a trial by jury, McCray was convicted of the offenses of unlawful possession of a firearm and possession of five pounds or less, but more than four ounces, of marijuana.  Punishment was assessed by the jury at ten and six years’ confinement, respectively.  This appeal followed.

III.  Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to
 the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

IV.  Possession of Marijuana

As discussed only by the State in its briefing, it was the State’s burden at trial to show that McCray had controlled, managed, or cared for the marijuana found in the home and that he knew it was contraband.  
See Poindexter v. State
, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).  Because McCray was not in exclusive possession of the home at the time of the raid, the State had to show independent facts and circumstances that affirmatively linked McCray to the marijuana to establish his knowledge of and control over it. 
 See id
. at 406.  Examples of these links have been enumerated by this court in 
Tucker v. State
, 183 S.W.3d 501, 510 (Tex. App.—Fort Worth 2005, no pet.), and it is the “logical force” that the links create to connect the defendant to the crime that is important, rather than their number.  
Nhem v. State
, 129 S.W.3d 696, 699-700 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  Those links include (1) McCray’s presence when the search warrant was executed, (2) whether the drugs were in plain view, (3) McCray’s proximity to and the accessibility of the drugs, (4) whether McCray was under the influence of narcotics when arrested, (5) whether McCray possessed other contraband or narcotics when arrested, (6) whether McCray made incriminating statements when arrested, (7) whether McCray attempted to flee, (8) whether McCray made furtive gestures, (9) whether the contraband had an odor, (10) whether other contraband or drug paraphernalia was present, (11) whether McCray owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether McCray was found with a large amount of cash, and (14) whether McCray’s conduct indicated a consciousness of guilt.  
See Tucker
, 183 S.W.3d at 510. 

V.  Analysis
 

Reviewing the facts as previously discussed and comparing them to the aforementioned links, we observe that McCray was present in the house when the search warrant was executed; drugs were found in the living room; McCray was standing close to the refrigerator, where more marijuana was found; two weapons were found in the living room; McCray made the statement, “[W]e only got usable amounts,” and “[T]hat’s my usable amount”; McCray had previously told Officer Burns that the residence was his home; the drugs were found in an enclosed home; McCray was in the possession of $240; and McCray’s comments about his “usable amounts” were an indication of guilt.

We conclude that a review of the evidence demonstrates sufficient links to connect McCray to the marijuana and that, under the appropriate standard of review, a rational trier of fact could have found the essential elements of possession of marijuana by McCray.  We overrule McCray’s sole point.

VI.  Conclusion

Having overruled McCray’s point, we affirm the trial court’s judgments.

PER CURIAM

PANEL F: MCCOY, DAUPHINOT, and HOLMAN, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: September 27, 2007

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
McCray’s briefing addresses only his conviction for possession of marijuana; therefore, only this issue will be addressed.  McCray’s challenge to his conviction for unlawful possession of a firearm is forfeited due to inadequate briefing.  
See
 
Tex. R. App. P.
 38.1(h); 
Salazar v. State
, 38 S.W.3d 141, 147 (Tex. Crim. App.), 
cert. denied
, 534 U.S. 855 (2001).