In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00112-CV


______________________________





IN RE: JEFFREY SCOTT HATFIELD








 


Original Mandamus Proceeding







 
 



Before Morriss, C.J., Carter and Moseley, JJ.

Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 Jeffrey Scott Hatfield has filed a pro se petition for writ of mandamus which names the
Honorable Robert Newsom, presiding judge of the Eighth Judicial District Court of Hopkins County,
Texas, as Respondent. On or about January 30, 2006, the Eighth Judicial District Court of Hopkins
County issued an order under statutory fiat directing payment be made from Hatfield's inmate trust
fund to reimburse the county for "court costs, fees and/or fines." The trial court's order states that
it is based on Section 501.014(e) of the Texas Government Code, which allows the Department, on
"notification by a court," to withdraw from an inmate's trust account any amount the inmate is
ordered to pay by order of the court. See Tex. Gov't Code Ann. § 501.014(e) (Vernon 2004); see
also In re Keeling, 227 S.W.3d 391, 394 (Tex. App.--Waco 2007, orig. proceeding); Abdullah v.
State, 211 S.W.3d 938, 943 (Tex. App.--Texarkana 2007, no pet.) (finding inmate was not afforded
procedural due process). Hatfield argues he was not afforded due process, claims the underlying
judgment is void, and requests return of all funds garnished from his inmate trust account.

 In our disposition of Hatfield's petition, it is not necessary for us to decide the petition on its
merits or whether mandamus is an available remedy. In its response to Hatfield's petition, the trial
court has submitted an order declaring the underlying judgment against Hatfield void. In light of the
trial court's order, we dismiss as moot Hatfield's petition for writ of mandamus. (1) 




 Josh R. Morriss, III

 Chief Justice


Date Submitted: November 14, 2007

Date Decided: November 15, 2007


1. We note Hatfield also requests the return of the funds removed from his trust account. The
record, though, does not indicate the amount which has actually been removed from Hatfield's trust
account. It is the relator's burden to provide this Court with a sufficient record to establish his or her
right to mandamus relief. Walker v. Packer, 827 S.W.2d 833, 837 (Tex. 1992) (orig. proceeding);
In re Pilgrim's Pride Corp., 187 S.W.3d 197, 198-99 (Tex. App.--Texarkana 2006, orig.
proceeding); see Tex. R. App. P. 52.3. To the extent such relief might be available, we also deny
Hatfield's petition for failure to comply with Rule 52.3.


arbitrary and unreasonable manner." Malone v. State, 163 S.W.3d 785, 793 (Tex.
App.--Texarkana 2005, pet. ref'd) (citing Roise v. State, 7 S.W.3d 225, 233 (Tex. App.--Austin
1999, pet. ref'd)).

 In a suppression hearing, the trial court is the sole trier of fact and judge of witnesses'
credibility and the weight to be given their testimony. State v. Dixon, 151 S.W.3d 271, 274 (Tex.
App.--Texarkana 2004), aff'd, 206 S.W.3d 587 (Tex. Crim. App. 2006). We must review the
evidence in the record in the light most favorable to the trial court's ruling. State v. Ballard, 987
S.W.2d 889, 891 (Tex. Crim. App. 1999). In reviewing the record from the trial court, "we afford
almost total deference to the trial court's determination of historical facts that the record supports,
especially when the fact findings are based on an evaluation of the witnesses' credibility and
demeanor." Freeman v. State, 62 S.W.3d 883, 886 (Tex. App.--Texarkana 2001, no pet.) (citing
State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997)). However, "[w]e review de novo the court's application of the law of search
and seizure to those facts." Id. (citing Ross, 32 S.W.3d at 856). If, as is the case here, the trial court
files no written findings of fact and conclusions of law, we will assume the trial court made implicit
findings of fact that support the court's ruling "as long as those findings are supported by the record." 
Id. Moreover, if the trial court's decision is correct under any theory of law applicable to the case,
we will affirm the trial court's denial of the movant's motion to suppress. Id. (citing Ross, 32 S.W.3d
at 856).

 B. The Evidence Presented at Trial

 Only one witness testified at the hearing on Lee's motion to suppress: the arresting officer,
Gary Robinson of the Gladewater Police Department. Robinson was on routine patrol during the
night shift of July 30, 2004, when he drove by a particular residence on Melba Street in Gladewater
that the officer believed to be a location where methamphetamine was sold. Robinson saw two
people sitting inside a parked, maroon Oldsmobile; the car's interior lights were turned on. Robinson
continued past the residence and stopped approximately one-quarter mile down the road. He
"blacked out" his patrol unit and waited there for the maroon Oldsmobile to leave the suspected drug
house. 

 The maroon Oldsmobile did eventually leave the residence, being driven down the street
toward the location of Robinson's parked, "blacked out" patrol vehicle. When the driver of the
Oldsmobile got to the intersection in front of Robinson's car, he stopped at the designated four-way
stop sign; thereafter, the driver turned on the vehicle's turn signal and turned eastbound onto another
street. Robinson later observed the driver of the Oldsmobile again approach an intersection, stop
the vehicle at the designated point, and only thereafter turn on the vehicle's turn signal to indicate
an intended change of direction. Robinson subsequently made a traffic stop of the maroon
Oldsmobile. The driver of the vehicle, identified in court as Lee, later gave Robinson consent to
search the Oldsmobile. During that search, Robinson found the methamphetamine of which Lee was
convicted of possessing. 

 C. Application of Law to Facts

 The driver of an automobile is required to "use the signal authorized by Section 545.106 to
indicate an intention to turn, change lanes, or start from a parked position." Tex. Transp. Code
Ann. § 545.104(a) (Vernon 1999). "An operator intending to turn a vehicle right or left shall signal
continuously for not less than the last 100 feet of movement of the vehicle before the turn." Tex.
Transp. Code Ann. § 545.104(b) (Vernon 1999). 

 Lee would now have us read Article 545.104 to mandate the use of a turn signal only when
an operator is turning his or her vehicle while that vehicle is continuously moving without stopping;
but if, according to Lee's theory on appeal, the vehicle will be turning after it comes to a stopped
position, the statute should not require the operator to have previously signaled his or her intent to
turn for the requisite 100 feet. Lee's construction of the statute is not, however, supported by the
plain language of the Legislature's wording. We reach this conclusion because the statute contains
no wording to adopt Lee's proposed exception--that a vehicle which is stopping at a stop sign need
not signal a change of direction--nor is there any suggestion that the Legislature intended to ingraft
Lee's proposed excepted conduct into the otherwise plain wording of this statute. Nor has Lee
directed our attention to any other portion of the Texas Transportation Code that provides for Lee's
proposed exception. Indeed, the phrase "for not less than the last 100 feet of movement of the
vehicle before the turn" is clearly and unquestionably broad enough to encompass any predecessor
movement, even that movement that has ostensibly ceased via stopping at a designated stop sign or
traffic light, as long as that movement occurred within the 100 feet preceding the point at which the
driver changed the vehicle's direction. Id. (emphasis added). 

 The Fort Worth Court of Appeals has addressed a similar argument in Tucker v. State, 183
S.W.3d 501, 506-08 (Tex. App.--Fort Worth 2005, no pet.). In Tucker, the defendant challenged
the officer's ability to observe the driver's failure to signal for 100 feet before the turn. However, the
evidence showed the defendant, as in this case, signaled his turn only after arriving at the stop sign. 
The Fort Worth court found probable cause existed for the officer to stop the vehicle since the
defendant violated the law by failing to signal a turn as required. Tex. Transp. Code Ann.
§§ 545.104, 545.106 (Vernon 1999); Tucker, 183 S.W.3d at 507. We overrule Lee's first point of
error.

II. The Validity of Lee's Consent

 In a second part of the point of error, Lee contends his conduct of "consenting" to Robinson's
request to search was not validly given consent; instead, Lee contends that his response to the request
was ambiguous and that he was merely acquiescing to Robinson's exercise of authority. 

 Robinson testified that he asked Lee if he had any illegal items in his vehicle such as "guns
or narcotics," which Lee denied. When Lee was asked by Robinson, "Do you mind if I take a look?"
he responded by saying, "no." A search of the vehicle revealed the illegal substance. No evidence
contradicted this testimony; after hearing the evidence, the trial court determined that consent was
freely and voluntarily given. We grant almost total deference to the trial courts' determinations when
they are based on an evaluation of credibility and are supported by the record. No error has been
shown in the trial court's determination that Lee's consent was freely and voluntarily given. See
Masterson v. State, 155 S.W.3d 167, 170 (Tex. Crim. App. 2005).

III. Conclusion

 For the reasons stated, we overrule Lee's sole point of error and affirm the trial court's
judgment.


 Jack Carter

 Justice



Date Submitted: July 30, 2007

Date Decided: August 10, 2007



Do Not Publish