COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-06-216-CR

 

 

DAVID BRUCE JOHNSON                                                      APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 396TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

In three points, Appellant
David Johnson appeals his conviction for possession of more than 200 grams but
less than 400 grams of methamphetamine with intent to deliver.  We affirm.

                                                    

 








BACKGROUND

On July 25, 2004, Tammy
Thomas checked into room 319 at the Crowne Plaza Hotel in Arlington,
Texas.  On July 26, at 2:00 p.m.,
approximately two hours after checkout time, the hotel manager, Randy Jones,
attempted to contact the occupants of room 319 by knocking on the door and
later by telephone; no one answered. 
Jones noticed that the occupants had dead-bolted the door from the
inside, indicating that they were still in the room.  At that time, Jones called the Arlington
Police Department to check on the welfare of Thomas.

When the police arrived,
Jones used a master key card to disengage the dead-bolt and a screwdriver to
undo the security latch so that the police could enter the room.  The officers yelled out ATammy@ and AArlington Police@ several
times without a response.  Once the
officers entered the room, they noticed that Thomas and Appellant were asleep
in bed.  The officers continued to yell
out AArlington Police.@  Again, there was no
response.  Eventually, Thomas and
Appellant woke up and complied with the officers= directions.








The officers handcuffed both
Thomas and Appellant for officer safety reasons.  Later, Officer DeWall placed Thomas under
arrest because of an outstanding arrest warrant they had noticed on her record.  When asked for his name, Appellant identified
himself as AKip Lester@; however, the officers were unaware of this misidentification at the
time of the incident.

The officers had found no
contraband at this point and considered un-handcuffing Appellant, but before
attempting to do so, Officer DeWall looked in the bathroom to see if there were
any weapons that Appellant might use if given the opportunity.  Looking from the doorway, Officer DeWall
noticed an unusual bag protruding from a pair of jean shorts.  She looked more closely and noticed that the
large bag was filled with smaller, individual bags of white powder.  Upon later investigation, the officers also
found a wallet in the shorts, which contained $1,212 cash and a credit card
issued to AKip Lester.@








After the officers discovered
the white powdery substance, later found to be 261.14 grams of methamphetamine,
they placed Thomas and Appellant at a table before proceeding with the
investigation.  While at the table, they
began to whisper to each other, even over the officers= objections.  Officer DeWall
testified that Appellant told Thomas not to talk to the police. At one point,
Appellant told Thomas: ANo matter
what they say to or ask you, you did not have anything to do with this.@  Eventually, Thomas and
Appellant were separated for failing to remain quiet.  Once separated, the officers read Thomas and
Appellant their Miranda rights.  The
officers then Afroze@ the scene and took both Thomas and Appellant to jail.  At this time, the officers performed a more
extensive search and, on the bathroom counter and in a makeup bag located on
the counter, found 13.70 grams of gamma-hydroxybutyrate (GHB), a glass pipe, a
black straw, a glass vile that contained a white powdery substance, a bottle
with assorted pills, and a butane lighter.[2]

At trial, the jury found
Appellant guilty.  Appellant pled true to
an enhancement allegation,[3]
and the trial court assessed punishment at twenty years= confinement and a $1,000 fine.

SUFFICIENCY OF THE EVIDENCE

In his first two points,
Appellant challenges the legal and factual sufficiency of the evidence to show
that he possessed or was affirmatively linked to the methamphetamine.

Standard Of Review








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

This standard gives full play
to the responsibility of the trier of fact to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789.  The
trier of fact is the sole judge of the weight and credibility of the evidence.  See Tex.
Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). 
Thus, when performing a legal sufficiency review, we may not re‑evaluate
the weight and credibility of the evidence and substitute our judgment for that
of the fact‑finder.  Dewberry v.
State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529
U.S. 1131 (2000).  We must resolve any
inconsistencies in the evidence in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406
(Tex. Crim. App. 2000).  The sufficiency
of the evidence should be measured by the elements of the offense as defined by
the hypothetically correct jury charge for the case.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997); Bowden v. State, 166 S.W.3d 466, 470 (Tex. App.CFort Worth 2005, pet. ref=d).








When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact‑finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact‑finder=s
determination is manifestly unjust.  Watson, 204 S.W.3d at 414‑15, 417; Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the fact‑finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  Thus, we must give due deference to
the fact‑finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.

Affirmative Link








To support a conviction for
unlawful possession of a controlled substance, the State must affirmatively
link the accused to the contraband by proving that the accused (1) exercised
control, management, or care over the contraband and (2) knew the substance he
possessed was contraband.  See Tex. Health & Safety Code Ann. ' 481.002(38) (Vernon Supp. 2006), ' 481.112(a) (Vernon 2003); Poindexter v. State, 153 S.W.3d
402, 405-06 (Tex. Crim. App. 2005); Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995).  Under the Aaffirmative links@ rule, when the accused is not in exclusive possession of the place
where the substance is found, it cannot be concluded that he had knowledge of
and control over it unless there are additional independent facts and
circumstances which affirmatively link him to the contraband.  Poindexter, 153 S.W.3d at 406.  That is, the evidence must establish, to the
requisite level of confidence, that the accused=s connection with the drug was more than just fortuitous.  Id. at 405-06; Tucker v. State,
183 S.W.3d 501, 510 (Tex. App.CFort Worth 2005, no pet.).

Affirmative links can be
proven by direct or circumstantial evidence. 
Brown, 911 S.W.2d at 747. 
Factors we consider include (1) Appellant=s presence when the search was executed, (2) whether the drugs were in
plain view, (3) Appellant=s proximity
to and the accessibility of the drugs, (4) whether he was under the influence
of narcotics when arrested, (5) whether he possessed other contraband or
narcotics when arrested, (6) whether he made incriminating statements when
arrested, (7) whether he attempted to flee, (8) whether he made furtive
gestures, (9) whether there was an odor of the contraband, (10) whether other
contraband or drug paraphernalia were present, (11) whether he owned or had the
right to possess the place where the drugs were found, (12) whether the place
where the drugs were found was enclosed, (13) whether he was found with a large
amount of cash, and (14) whether his conduct indicated a consciousness of
guilt.  See Tucker, 183 S.W.3d at
510.








The State did not base its
affirmative links argument on nor present evidence of factors (4), (5), or (7)B(9).  However, the affirmative
links test is determined by a totality of the circumstances, where the number
of relevant factors is less significant than the logical force of the link they
establish between the accused and the controlled substance.  See Wootton v. State, 132 S.W.3d 80,
87 (Tex. App.CHouston
[14th Dist.] 2004, pet. ref=d); Hudson v. State, 128 S.W.3d 367, 374 (Tex. App.CTexarkana 2004, no pet.).

Appellant concedes that
factors (1) and (10)B(12) are
supported by the evidence presented at trial. 
However, Appellant argues that factors (2), (3), and (13) are not
supported because the contraband was not in plain view, he was not in close
proximity nor had access to the contraband, and he was not in possession of a
large amount of cash when arrested.  The
evidence presented at trial, however, showed that the 261.14 grams of
methamphetamine was in the bathroom, sticking out of a pair of shorts while
Appellant was asleep in a nearby bed. 
While looking for weapons from the bathroom doorway, Officer DeWall noticed the contraband in
plain view and identified it as a white powdery substance.  Moreover, the officers found $1,212 cash in a
wallet located in the same pair of shorts as the contraband.  While the wallet was not in Appellant=s possession, the wallet contained a credit card that had
the same name printed on it that Appellant used to misidentify himself to the
police, AKip Lester.@








Appellant also
argues that there was only Aslight@ evidence that he made incriminating statements or that
his conduct showed a consciousness of guilt (factors 6 and 14).  Again, however, the record provides support
for the jury=s finding.  Officer
DeWall testified that Appellant told Thomas not to talk to the police and that,
ANo matter what they say to or ask you, you did not have
anything to do with this.@  Also, Appellant
misidentified himself as AKip Lester.@  It is reasonable
to conclude that the juryCthe sole judge of the weight and credibility of the
evidenceCwhen presented with such testimony, could have found that
Appellant appeared to have a guilty conscience and that his statements were
incriminating.  Furthermore, the jury
could have weighed the evidence of the cash, the large quantity of drugs, the
proximity of the drugs in relation to Appellant, additional drugs found at the
scene and their relationship with methamphetamine, and all other relevant
circumstantial evidence to conclude that there were affirmative links between
Appellant and the methamphetamine.  In
other words, by weighing the evidence presented on nine of the fourteen
affirmative link factors, the jury could have found that Appellant had more
than a fortuitous link to the contraband. 
See Poindexter, 153 S.W.3d at 406.








Viewing the
evidence in the light most favorable to the verdict and resolving any
inconsistencies in its favor, we conclude that there was legally sufficient
evidence to support the jury=s verdict.  See
Curry, 30 S.W.3d at 406; see also Tucker, 183 S.W.3d at 510B11 (holding that proximity and drugs in plain view were
sufficient to establish affirmative link). 
We overrule Appellant=s first point.

When viewing all
the evidence in a neutral light, we conclude that the evidence is not so weak
that the jury=s determination was clearly wrong and manifestly
unjust.  In addition to all the evidence
described above, the jury also heard testimony that would not support an
affirmative links finding.  Specifically,
Thomas testified on direct and later on cross-examination that the shorts
containing the contraband were not Appellant=s but perhaps those of an unknown man who came into the
room, showered, and later left without his shorts.  The jury, weighing this evidence and
evaluating the witnesses= credibility and demeanor, nevertheless found Appellant
guilty of possession with intent to deliver. 
In reviewing the entire record, the great weight of the evidence does
not contradict the jury=s verdict. 
Accordingly, we overrule Appellant=s second point.

EXTRANEOUS
OFFENSE EVIDENCE

In his third
point, Appellant complains that the trial court abused its discretion by
admitting extraneous offense evidence in violation of Texas Rules of Evidence
404(b) and 403.








Standard of
Review

The admissibility of evidence is within the
discretion of the trial court and will not be overturned absent an abuse of
discretion.  Moses v. State, 105
S.W.3d 622, 627 (Tex. Crim. App. 2003). 
That is to say, as long as the trial court=s
ruling was within the zone of reasonable disagreement, the appellate court
should affirm.  Id.; Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh=g).  Whether extraneous offense evidence has
relevance apart from character conformity, as required by Texas Rule of
Evidence 404(b), is a question for the trial court.  Moses, 105 S.W.3d at 627.  An appellate court owes no less deference to
the trial judge in making this decision than it affords the judge in making any
other relevancy determination.  Id.;
Montgomery, 810 S.W.2d at 391. 
When a trial court further decides not to exclude the evidence, finding
that the probative value of the evidence is not outweighed by the danger of
unfair prejudice, this decision too shall be given deference.  Moses, 105 S.W.3d at 627.

Rule 404(b)








Rule 404(b) provides that evidence of Aother
crimes, wrongs, or acts@ in a criminal case is
inadmissible to prove defendant acted in conformity with such other bad
acts.  Tex.
R. Evid. 404(b).  However, Aother
crimes, wrongs, or acts@ are admissible as proof of
motive, opportunity, intent, preparation, plan, knowledge, identity, or absence
of mistake or accident.  Id.  The list provided in Rule 404(b) is
illustrative rather than exhaustive.  See
Montgomery, 810 S.W.2d at 387-88. 
Evidence of extraneous transactions may be admitted in drug possession
cases whenever they tend Ato prove the requisite
affirmative link to the contraband.@  Brown v. State, 911 S.W.2d 744, 748
(Tex. Crim. App. 1995) (quoting Saenz v. State, 843 S.W.2d 24, 27 (Tex.
Crim. App. 1992)).

Appellant objects to the admission of
extraneous offense evidence pertaining to other controlled substances and
illegal narcotics found on the bathroom counter of the hotel room.  This evidence lends direct support to the
tenth factor in the affirmative links analysis, which asks Awhether other contraband or drug paraphernalia were
present.@  See Tucker,
183 S.W.3d at 510.  Because the
extraneous offense evidence supports this factor, it ultimately tends to Aprove the requisite affirmative link to the contraband.@  See Brown, 911 S.W.2d at 748.  Accordingly, it was not an abuse of
discretion to admit evidence of the other drugs and drug paraphernalia.  See id.

Rule 403








Appellant also argues that the extraneous
offense evidence should not have been admitted under Rule 403 of the Texas
Rules of Evidence.  Rule 403 states that
otherwise relevant evidence may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence. 
Tex. R. Evid. 403.  There are four factors that should be
considered in a Rule 403 balancing test:

(1) how compellingly the extraneous offense evidence serves to
make a fact of consequence more or less probableCa factor which is related to the strength of the evidence
presented by the proponent to show the defendant in fact committed the
extraneous offense;

 

(2) the potential
the other offense evidence has to impress the jury Ain some irrational but nevertheless indelible way@;

(3) the time the proponent will need to develop the evidence,
during which the jury will be distracted from consideration of the indicted
offense; [and]

 

(4) the force of the proponent=s need for this evidence to prove a fact of consequence, i.e.,
does the proponent have other probative evidence available to him to help
establish this fact, and is this fact related to an issue in dispute.  

 

Santellan v. State, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997) (footnote
omitted); Marc v. State, 166 S.W.3d 767, 776 (Tex. App.CFort Worth 2005, pet. ref=d).








Looking at
probative value, the evidence of other drugs and controlled substances[4] makes
it more probable that Appellant knowingly possessed methamphetamine with intent
to deliver.  Again, this evidence
supports the tenth factor in the affirmative links analysis, which tends to
show that the connection between Appellant and the 261.14 grams of
methamphetamine found in the bathroom was not incidental or fortuitous but
rather intentional. Furthermore, because the evidence supporting the charged
offense is far more damaging than that objected to at trial, it is not likely
that such evidence would impress a jury in an irrational but nevertheless
indelible way.  See Santellan, 939
S.W.2d at 169; Marc, 166 S.W.3d at 776. 
Additionally, because the State spent relatively little time developing
and discussing the extraneous offense evidence, the State gave it no undue
weight.  And last, as stated above, the
evidence supported and helped satisfy the affirmative links test.  It was necessary to prove a consequence of
fact, specifically, that Appellant possessed the contraband with an intent to
deliver.  Balancing these factors, we
conclude that the trial court did not abuse its discretion by admitting the
evidence under Rule 403.








Appellant also
argues that the prejudicial effect of this evidence is Aexacerbated@ by the trial court=s failure to include a limiting instruction.  However, under Texas Rule of Evidence 105,
when evidence is offered for a limited purpose, there must be a request for a
limiting instruction.  Tex. R. Evid. 105.  Without such a request, the court=s action in admitting such evidence without limitation
shall not be a ground for complaint on appeal. 
Id.  We overrule Appellant=s third point of error.

CONCLUSION

Having overruled
all of Appellant=s points of error, we affirm the trial court=s judgment.

 

 

PER CURIAM

 

PANEL F:  HOLMAN, J.; CAYCE,
C.J.; and MCCOY, J.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)       

 

DELIVERED:  September 27,
2007











[1]See Tex. R.
App. P. 47.4.





[2] The pill bottle found on the
bathroom counter contained, among other things, 9.74 grams of alprazolam
(Xanax), in various pill forms; 1.01 grams of dihydrocodeinone (Vicodin); and
0.28 grams of methylenedioxymethamphetamine (Ecstasy).  Appellant was not charged with possession of
GHB or any other controlled substance found on the bathroom counter or in the
makeup bag, but rather the 261.14 grams of methamphetamine found in the pair of
men=s shorts on the bathroom floor.





[3] Prior to the incident, Appellant
was convicted of the felony offense of vehicle theft, $750-$20,000. 





[4] Hershel Tebay, Commander of the
Fort Worth Narcotics Unit, testified that a depressant type drug, like GHB or
Xanax, is commonly taken at the end of a Ameth run@ to help the drug user sleep.