COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-160-CR

 

 

WILLIAM HORACE PALMER, JR.,                                           APPELLANT

a/k/a
WILLIAM HORACE PALMER,

a/k/a
WILLIAM H. PALMER,

a/k/a
BILL PALMER

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

              FROM
THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

In one issue, Appellant
William Horace Palmer, Jr. appeals his conviction for possession of less than
one gram of methamphetamine.  We affirm.

 

 








I.  Background

On February 11, 2006, Palmer
was traveling with passenger David Spears eastbound along Highway 377 in Hood
County, Texas.  Around 12:30 a.m.,
Officer Rynn Sappington, traveling westbound in a marked police vehicle on
Highway 377, observed an individual driving a 1992 Chrysler Fifth Avenue New
Yorker at 45 mph on the highway with green headlight covers.  Based on this suspicious behavior,[2]
Sappington redirected his vehicle to the eastbound side of the highway to pull
closer to the vehicle in question.  Once
he drove past a rise in the road to where he could see the vehicle, he noticed
that the driver, Palmer, had already pulled over on the highway shoulder and
that someone had parked a truck directly in front of Palmer.  And as he pulled off the highway, he observed
an individual walking back from the truck and another standing in front of
Palmer=s vehicle.  When he finally
stopped on the shoulder, Sappington activated the video camera in his vehicle,[3]
and as he exited his vehicle, the individual in the truck suddenly drove away.








As Sappington walked toward
Palmer and Spears, Palmer attempted to remove the green headlight covers.  Sappington asked for identification from both
men and then questioned Palmer regarding the situation with the truck that
drove away.  Palmer told Sappington that
they had called the man in the truck and asked him to pull over so that Spears
could borrow some money. However, when Sappington asked Spears the same
question, he told Sappington that he and Palmer thought they recognized the man
in the truck on the highway shoulder and stopped to see if anything was wrong.[4]  At this time, Sappington noticed that Palmer
was pacing around, his hands were shaking, and his pupils were extremely
dilated.








Sappington asked Palmer for
consent to search his person and the vehicle, and Palmer consented to both
searches.  Sappington searched the jacket
that Palmer was wearing, and in the front left pocket, Sappington found a
yellow plastic bag containing a white crystalized substance that he believed to
be methamphetamine.  When asked about the
bag, Palmer first said that there was a Acoin@ in it, but
Sappington testified that there was no coin in the bag.  Palmer then accused Sappington of planting or
placing the bag on his person.  And
lastly, Palmer told Sappington that the bag belonged to an old man that he had
worked with and that it contained electrical shavings. Sappington placed Palmer
under arrest for possession of a controlled substance found in his jacket and
also gave him a warning for the use of green headlight covers.

Sappington searched the car
and found another bag under the visor on the passenger side that contained a
white crystalized substance.  Sappington
believed the substance to be methamphetamine and arrested Spears for possession
of the alleged controlled substance.  At
that time, Sappington also found a glass pipe in the car.[5]  And later when he inventoried the car,
Sappington found a torch lighter on the driver=s side floorboard.  Lab results indicated
trace amounts of methamphetamine in the bag found on Palmer=s person.

Palmer pled not guilty to the
charge of possession of less than one gram of methamphetamine.  The jury found Palmer guilty and assessed punishment
at five years=
imprisonment.[6]  The trial court sentenced Palmer accordingly.








II.  Sufficiency
of the Evidence

Palmer argues that the
evidence is legally and factually insufficient to support the jury=s finding that he knowingly possessed methamphetamine.

A.     Standard of Review

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the prosecution in order to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, No. PD-1311-05, 2007 WL 2937093, at *4 (Tex. Crim. App. Oct. 10,
2007).








This standard gives full play
to the responsibility of the trier of fact to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789.  The
trier of fact is the sole judge of the weight and credibility of the evidence.  See Tex.
Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). 
Thus, when performing a legal sufficiency review, we may not re-evaluate
the weight and credibility of the evidence and substitute our judgment for that
of the fact-finder.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131
(2000).  Instead, we Adetermine whether the necessary inferences are reasonable based upon
the combined and cumulative force of all the evidence when viewed in the light
most favorable to the verdict.@  Hooper v. State, 214
S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the fact-finder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 2007 WL 2937093, at * 4.

When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact‑finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact‑finder=s
determination is manifestly unjust.  Watson, 204 S.W.3d at 414B15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000).  To reverse under the second
ground, we must determine, with some objective basis in the record, that the
great weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the fact‑finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  Thus, we must give due deference to
the fact-finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.

B.     Affirmative Link








To prove unlawful possession
of a controlled substance, the State must prove that Palmer (1) exercised
control, management, or care over the substance and (2) knew the matter
possessed was contraband.  Poindexter
v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).  In this case, Sappington found the contraband
in the jacket that Palmer was wearing at the time of the search; however,
Palmer argues that because he did not own the jacket and the bag contained only
trace amounts of methamphetamine, an affirmative links analysis is
appropriate.  See Muckleroy v.
State, 206 S.W.3d 746, 747B49 (Tex. App.CTexarkana
2006, pet. ref=d) (applying
affirmative links analysis to show intent to possess when only trace amounts of
contraband were found in the appellant=s truck).








AAffirmative
link@ is merely a shorthand expression to identify what must be proven in a
prosecution for the possession of illegal drugs.  Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995); Deener v. State, 214 S.W.3d 522, 529B30 (Tex. App.CDallas 2006,
pet. ref=d).  Under the affirmative links
rule, the evidence must establish, to the requisite level of confidence, that
the accused=s connection
with the drug was more than just fortuitous.  Poindexter, 153 S.W.3d at 405B06; Tucker v. State, 183 S.W.3d 501, 510 (Tex. App.CFort Worth 2005, no pet.). 
Affirmative links can be proven by direct or circumstantial
evidence.  See Poindexter, 153
S.W.3d at 405B06; Brown,
911 S.W.2d at 747.  The affirmative links
test looks at the totality of the circumstances and the number of relevant
factors is less significant than the logical force the factors have in
establishing the elements of the offence. 
See Evans v. State, 202 S.W.3d 158, 166 (Tex. Crim. App. 2006);
Wootton v. State, 132 S.W.3d 80, 87 (Tex. App.CHouston [14th Dist.] 2004, pet. ref=d).

Nonexclusive factors we
consider include (1) the accused=s presence when the search was executed, (2) whether the contraband
was in plain view, (3) the accused=s proximity to and the accessibility of the contraband, (4) whether
the accused was under the influence of narcotics when arrested, (5) whether the
accused possessed other contraband or narcotics when arrested, (6) whether the
accused made incriminating statements when arrested, (7) whether the accused
attempted to flee, (8) whether the accused made furtive gestures, (9) whether
there was an odor of the contraband, (10) whether other contraband or drug
paraphernalia were present, (11) whether the accused owned or had the right to
possess the place where the drugs were found, (12) whether the place where the
drugs were found was enclosed, (13) whether the accused was found with a large
amount of cash, (14) whether the accused=s conduct indicated a consciousness of guilt, (15) whether the accused
had a special connection to the contraband, (16) whether the occupants gave
conflicting statements about relevant matters, and (17) whether the accused was
observed in a suspicious area under suspicious circumstances.  See Muckleroy, 206 S.W.3d at 749;
Tucker, 183 S.W.3d at 510; Lassaint v. State, 79 S.W.3d 736, 740B41 (Tex. App.CCorpus
Christi 2002, no pet.).








The evidence that
demonstrates the strongest affirmative link between the contraband and Palmer
is the bag of methamphetamine found in the jacket that Palmer was wearing at
the time Sappington performed the search. 
This evidence is pertinent to the point that Palmer had access to and a
special relationship with the contraband. 
Palmer attempted to rebut this evidence, however, by claiming that he
did not own the jacket but merely found it and put it on after work the night
of the offense.  Spears testified that he
and Palmer were working on a truck at Benny Evan=s house, whom Spears claims has a large garage for trucks.  Spears went on to state that after working on
the truck, Palmer had to change clothes because his coveralls were covered in
grease and he did not want to get his mother=s car dirty.  Because it was
cold outside, Spears stated that Palmer put on a jacket that had been Alaying in that garage for about a month, month and a half.@  The jury was entitled to
believe all, some, or none of Spears=s testimony regarding the ownership of the jacket.  See Chambers v. State, 805
S.W.2d 459, 461 (Tex. Crim. App. 1991).








In addition to Palmer=s access to the drugs, the evidence also shows that Palmer appeared to
be under the influence of methamphetamine. 
Sappington testified that Palmer=s hands were shaking, he was pacing, and that his eyes were extremely
dilated.  Sappington admitted that while
some of Palmer=s behaviorCpacing and shaky handsCis consistent with the behavior of an innocent person, in Sappington=s experience, Palmer=s behavior indicated that he was under the influence of
methamphetamine.  The record further
provides evidence of Palmer=s guilty conscience as he quickly gave Sappington multiple
explanations for the bag found in his pocket. 
Palmer first claimed that there was a coin inside the bag, then he
accused Sappington of planting the bag on his person, and finally he claimed
that the bag belonged to an old man that worked at the same garage as Palmer
and that it contained electrical shavings. 








There is also evidence of
other contraband and drug paraphernalia. 
On the passenger side of the car, Sappington found a second bag
containing a white crystalized substance that he believed to be
methamphetamine.  Further, Sappington
found a pipe in the car and, specifically on the driver=s side floorboard, a torch lighter that he stated is commonly used
when smoking methamphetamine because it applies steady heat to the pipe.  And finally, Sappington found Palmer and
Spears pulled over on Highway 377 around 12:30 a.m. with a truck pulled over
directly in front of Palmer=s vehicle.  Sappington observed
one individual walking back from the truck and another standing in front of
Palmer=s vehicle, and as Sappington exited his vehicle, the occupant in the
truck suddenly drove away.  Sappington
testified that he thought he might have found Palmer in some sort of drug
transaction, which would indicate that Sappington found Palmer in a suspicious
area under suspicious circumstances. 
These circumstances become even more suspicious when coupled with Palmer
and Spears=s
conflicting statements regarding the presence of the truck.

There is ample evidence in
the record to support the jury=s verdict.  More specifically,
under these facts, the jury could have found that the link between Palmer and
the trace amounts of methamphetamine was more than fortuitous.  Thus, when viewing the evidence in the light
most favorable to the verdict and resolving any inconsistencies in its favor,
we hold that the evidence is legally sufficient to support the jury=s verdict.  See Muckleroy,
206 S.W.3d at 749.

When viewing all the evidence
in a neutral light, we conclude that the evidence is not so weak that the jury=s determination was clearly wrong and manifestly unjust.  Likewise, we hold that the great weight and
preponderance of all the evidence does not contradict the verdict.  The jury, as the trier of fact, was entitled
to either believe or disbelieve Spears=s testimony regarding the jacket, and we must defer to the jury=s determination of the weight to be given to this contradictory
testimonial evidence.  See Johnson,
23 S.W.3d at 8; Chambers, 805 S.W.2d at 461.  Thus, we hold that the evidence is also
factually sufficient to supports the jury=s verdict.  See Muckleroy,
206 S.W.3d at 749.  Accordingly, we
overrule Palmer=s issue.

 

 








III.  Conclusion

Having overruled Palmer=s issue, we affirm the trial court=s judgment.

 

PER CURIAM

PANEL F:  HOLMAN, WALKER, and
MCCOY, JJ.

DO NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  January 17, 2008

 











[1]See Tex. R.
App. P. 47.4.





[2]Sappington testified that driving
with green headlight covers is a violation of the Texas Transportation Code and
that while driving 45 mph on the highway is not a per se violation, it was
unusual.





[3]At trial, the jury watched the
video of the traffic stop, and Sappington explained and clarified certain
portions on direct examination.





[4]Spears testified that while his and
Palmer=s stories were different, he did in
fact borrow ten dollars from one of the men in the truck.





[5]Palmer was charged with and
convicted of possession of the methamphetamine found in his jacket pocket, not
that found under the passenger side visor. 
At trial, Sappington made it clear that it was not his contention that
the pipe or the bag on the passenger side belonged to Palmer. 





[6]Palmer received an enhanced
sentence because the jury found true the allegations in the enhancement
paragraph and both habitual counts.