COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-160-CR

WILLIAM HORACE PALMER, JR., APPELLANT

a/k/a WILLIAM HORACE PALMER,

a/k/a WILLIAM H. PALMER,

a/k/a BILL PALMER

V.

THE STATE OF TEXAS STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In one issue, Appellant William Horace Palmer, Jr. appeals his conviction for possession of less than one gram of methamphetamine.  We affirm.

I.  
Background

On February 11, 2006, Palmer was traveling with passenger David Spears eastbound along Highway 377 in Hood County, Texas.  Around 12:30 a.m., Officer Rynn Sappington, traveling westbound in a marked police vehicle on Highway 377, observed an individual driving a 1992 Chrysler Fifth Avenue New Yorker at 45 mph on the highway with green headlight covers.  Based on this suspicious behavior,
(footnote: 2) Sappington redirected his vehicle to the eastbound side of the highway to pull closer to the vehicle in question.  Once he drove past a rise in the road to where he could see the vehicle, he noticed that the driver, Palmer, had already pulled over on the highway shoulder and that someone had parked a truck directly in front of Palmer.  And as he pulled off the highway, he observed an individual walking back from the truck and another standing in front of Palmer’s vehicle.  When he finally stopped on the shoulder, Sappington activated the video camera in his vehicle,
(footnote: 3) and as he exited his vehicle, the individual in the truck suddenly drove away.

As Sappington walked toward Palmer and Spears, Palmer attempted to remove the green headlight covers.  Sappington asked for identification from both men and then questioned Palmer regarding the situation with the truck that drove away.  Palmer told Sappington that they had called the man in the truck and asked him to pull over so that Spears could borrow some money. However, when Sappington asked Spears the same question, he told Sappington that he and Palmer thought they recognized the man in the truck on the highway shoulder and stopped to see if anything was wrong.
(footnote: 4)  At this time, Sappington noticed that Palmer was pacing around, his hands were shaking, and his pupils were extremely dilated.

Sappington asked Palmer for consent to search his person and the vehicle, and Palmer consented to both searches.  Sappington searched the jacket that Palmer was wearing, and in the front left pocket, Sappington found a yellow plastic bag containing a white crystalized substance that he believed to be methamphetamine.  When asked about the bag, Palmer first said that there was a “coin” in it, but Sappington testified that there was no coin in the bag.  Palmer then accused Sappington of planting or placing the bag on his person.  And lastly, Palmer told Sappington that the bag belonged to an old man that he had worked with and that it contained electrical shavings. Sappington placed Palmer under arrest for possession of a controlled substance found in his jacket and also gave him a warning for the use of green headlight covers.

Sappington searched the car and found another bag under the visor on the passenger side that contained a white crystalized substance.  Sappington believed the substance to be methamphetamine and arrested Spears for possession of the alleged controlled substance.  At that time, Sappington also found a glass pipe in the car.
(footnote: 5)  And later when he inventoried the car, Sappington found a torch lighter on the driver’s side floorboard.  Lab results indicated trace amounts of methamphetamine in the bag found on Palmer’s person.

Palmer pled not guilty to the charge of possession of less than one gram of methamphetamine.  The jury found Palmer guilty and assessed punishment at five years’ imprisonment.
(footnote: 6)  The trial court sentenced Palmer accordingly.

II.  
Sufficiency of the Evidence

Palmer argues that the evidence is legally and factually insufficient to support the jury’s finding that he knowingly possessed methamphetamine.

A. Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979);
 Clayton v. State
, No. PD-1311-05, 2007 WL 2937093, at *4 (Tex. Crim. App. Oct. 10, 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence. 
 See
 
Tex. Code Crim. Proc. Ann. 
art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  
Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  Instead, we “determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.”  
Hooper v. State
, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).  We must presume that the fact-finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution.  
Jackson
, 443 U.S. at 326, 99 S. Ct. at 2793; 
Clayton
, 2007 WL 2937093, at * 4.

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.  
Watson v. State
, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder’s determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder’s determination is manifestly unjust. 
 Watson
, 204 S.W.3d at 414–15, 417; 
Johnson v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.  
Watson
, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court “harbor a subjective level of reasonable doubt to overturn [the] conviction.”
 
 Id
. 
 We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury’s resolution of a conflict in the evidence.  
Id
.  We may not simply substitute our judgment for the fact-finder’s.  
Johnson
, 23 S.W.3d at 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a different result is appropriate, we must defer to the jury’s determination of the weight to be given contradictory testimonial evidence because resolution of the conflict “often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.”  
Johnson
, 23 S.W.3d at 8.  
Thus, we must give due deference to the fact-finder’s determinations, “particularly those determinations concerning the weight and credibility of the evidence.”  
Id
. at 9.

B. Affirmative Link

To prove unlawful possession of a controlled substance, the State must prove that Palmer (1) exercised control, management, or care over the substance and (2) knew the matter possessed was contraband.  
Poindexter v. State
, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).  In this case, Sappington found the contraband in the jacket that Palmer was wearing at the time of the search; however, Palmer argues that because he did not own the jacket and the bag contained only trace amounts of methamphetamine, an affirmative links analysis is appropriate.  
See
 
Muckleroy v. State
, 206 S.W.3d 746, 747–49 (Tex. App.—Texarkana 2006, pet. ref’d) (applying affirmative links analysis to show intent to possess when only trace amounts of contraband were found in the appellant’s truck).

“Affirmative link” is merely a shorthand expression to identify what must be proven in a prosecution for the possession of illegal drugs.  
Brown v. State
, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); 
Deener v. State
, 214 S.W.3d 522, 529–30 (Tex. App.—Dallas 2006, pet. ref’d).  Under the affirmative links rule, 
the evidence must establish, to the requisite level of confidence, that the accused’s connection with the drug was more than just fortuitous. 
 Poindexter
, 153 S.W.3d at 405–06
; 
Tucker v. State
, 183 S.W.3d 501, 510 (Tex. App.—Fort Worth 2005, no pet.).
  Affirmative links can be proven by direct or circumstantial evidence.  
See Poindexter, 
153 S.W.3d at 405–06; 
Brown
, 911 S.W.2d at 747.  The affirmative links test looks at the totality of the circumstances and the number of relevant factors is less significant than the logical force the factors have in establishing the elements of the offence.  
See 
Evans v. State
, 202 S.W.3d 158, 166 (Tex. Crim. App. 2006)
; Wootton v. State
, 132 S.W.3d 80, 87 (Tex. App.—Houston [14th Dist.] 2004, pet. ref’d).

Nonexclusive factors we consider include (1) the accused’s presence when the search was executed, (2) whether the contraband was in plain view, (3) the accused’s proximity to and the accessibility of the contraband, (4) whether the accused was under the influence of narcotics when arrested, (5) whether the accused possessed other contraband or narcotics when arrested, (6) whether the accused made incriminating statements when arrested, (7) whether the accused attempted to flee, (8) whether the accused made furtive gestures, (9) whether there was an odor of the contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether the accused owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether the accused was found with a large amount of cash, (14) whether the accused’s conduct indicated a consciousness of guilt, (15) whether the accused had a special connection to the contraband, (16) whether the occupants gave conflicting statements about relevant matters, and (17) whether the accused was observed in a suspicious area under suspicious circumstances.  
See Muckleroy
, 206 S.W.3d at 749;
 Tucker
, 183 S.W.3d at 510; 
Lassaint v. State
, 79 S.W.3d 736, 740–41 (Tex. App.—Corpus Christi 2002, no pet.).

The evidence that demonstrates the strongest affirmative link between the contraband and Palmer is the bag of methamphetamine found in the jacket that Palmer was wearing at the time Sappington performed the search.  This evidence is pertinent to the point that Palmer had access to and a special relationship with the contraband.  Palmer attempted to rebut this evidence, however, by claiming that he did not own the jacket but merely found it and put it on after work the night of the offense.  Spears testified that he and Palmer were working on a truck at Benny Evan’s house, whom Spears claims has a large garage for trucks.  Spears went on to state that after working on the truck, Palmer had to change clothes because his coveralls were covered in grease and he did not want to get his mother’s car dirty.  Because it was cold outside, Spears stated that Palmer put on a jacket that had been “laying in that garage for about a month, month and a half.”  The jury was entitled to believe all, some, or none of Spears’s testimony regarding the ownership of the jacket.  
See
 
Chambers v. State
, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

In addition to Palmer’s access to the drugs, the evidence also shows that Palmer appeared to be under the influence of methamphetamine.  Sappington testified that Palmer’s hands were shaking, he was pacing, and that his eyes were extremely dilated.  Sappington admitted that while some of Palmer’s behavior—pacing and shaky hands—is consistent with the behavior of an innocent person, in Sappington’s experience, Palmer’s behavior indicated that he was under the influence of methamphetamine.  The record further provides evidence of Palmer’s guilty conscience as he quickly gave Sappington multiple explanations for the bag found in his pocket.  Palmer first claimed that there was a coin inside the bag, then he accused Sappington of planting the bag on his person, and finally he claimed that the bag belonged to an old man that worked at the same garage as Palmer and that it contained electrical shavings. 

There is also evidence of other contraband and drug paraphernalia.  On the passenger side of the car, Sappington found a second bag containing a white crystalized substance that he believed to be methamphetamine.  Further, Sappington found a pipe in the car and, specifically on the driver’s side floorboard, a torch lighter that he stated is commonly used when smoking methamphetamine because it applies steady heat to the pipe.  And finally, Sappington found Palmer and Spears pulled over on Highway 377 around 12:30 a.m. with a truck pulled over directly in front of Palmer’s vehicle.  Sappington observed one individual walking back from the truck and another standing in front of Palmer’s vehicle, and as Sappington exited his vehicle, the occupant in the truck suddenly drove away.  Sappington testified that he thought he might have found Palmer in some sort of drug transaction, which would indicate that Sappington found Palmer in a suspicious area under suspicious circumstances.  These circumstances become even more suspicious when coupled with Palmer and Spears’s conflicting statements regarding the presence of the truck.

There is ample evidence in the record to support the jury’s verdict.  More specifically, under these facts, the jury could have found that the link between Palmer and the trace amounts of methamphetamine was more than fortuitous.  
Thus, when viewing the evidence in the light most favorable to the verdict and resolving any inconsistencies in its favor, we hold that the evidence is legally sufficient to support the jury’s verdict.  
See Muckleroy
, 206 S.W.3d at 749.

When viewing all the evidence in a neutral light, we conclude that the evidence is not so weak that the jury’s determination was clearly wrong and manifestly unjust.  Likewise, we hold that the great weight and preponderance of all the evidence does not contradict the verdict.  The jury, as the trier of fact, was entitled to either believe or disbelieve Spears’s testimony regarding the jacket, and we must defer to the jury’s determination of the weight to be given to this contradictory testimonial evidence.  
See Johnson
, 23 S.W.3d at 8; 
Chambers
, 805 S.W.2d at 461.  
Thus, we hold that the evidence is also factually sufficient to supports the jury’s verdict. 
 See Muckleroy
, 206 S.W.3d at 749.  Accordingly, we overrule Palmer’s issue.

III.  
Conclusion

Having overruled Palmer’s issue, we affirm the trial court’s judgment.

PER CURIAM

PANEL F:  HOLMAN, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  January 17, 2008

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Sappington testified that driving with green headlight covers is a violation of the Texas Transportation Code and that while driving 45 mph on the highway is not a per se violation, it was unusual.

3:
At trial, the jury watched the video of the traffic stop, and Sappington explained and clarified certain portions on direct examination.

4:
Spears testified that while his and Palmer’s stories were different, he did in fact borrow ten dollars from one of the men in the truck.

5:
Palmer was charged with and convicted of possession of the methamphetamine found in his jacket pocket, not that found under the passenger side visor.  At trial, Sappington made it clear that it was not his contention that the pipe or the bag on the passenger side belonged to Palmer.
 

6:
Palmer received an enhanced sentence because the jury found true the allegations in the enhancement paragraph and both habitual counts.